James E. BAGG, Jr., Appellant,

v.

The UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, Robert M. Brecht, Michael Manheimer, Shelagh M. Yospur, and Catherine Contreras, Appellees.

No. A14–86–520–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 8, 1987.

Rehearing Denied March 12, 1987.

David M. Feldman and Gary Endelman, Houston, for appellant.

Jim Mattox, Austin, and J.L. Covington, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

This suit arises out of the termination of employment of James E. Bagg, Jr., appellant, from the University of Texas Medical Branch at Galveston (UTMB) in August 1983. Pleading a variety of causes of action against UTMB and several individual defendants, including an action based on 42 U.S.C. § 1983 (Civil Rights Act of 1871), appellant sought both damages and reinstatement with back pay. Appellees sought and were granted dismissal of all of appellant's claims. We affirm the dismissal of UTMB and reverse the dismissal and summary judgment in favor of the individual defendants.

The procedural history in this case is somewhat complicated. On May 6, 1983, appellant was notified that he would be discharged from UTMB effective August 31, 1983. On August 2, 1983, he filed a petition for injunctive and monetary relief asking the trial court to enjoin UTMB and appellees Robert M. Brecht and Michael Manheimer, appellant's supervisors, from dismissing him. A temporary restraining order was denied at an August 25, 1983, hearing. It appears the case was inactive until April 3, 1984, when appellant amended his petition. Appellees answered with an amended answer, special exceptions and a plea in abatement urging the court to find that it had no jurisdiction to hear the suit because all defendants were immune from suit.

In July 1985 appellees sought a protective order to postpone depositions scheduled by appellant until the court could hear appellees' special exceptions and plea in abatement. After a hearing, a protective order was granted and signed August 12, 1985. That order included a provision that "permitted" appellant "fifteen (15) days to replead his petition in response to the special exceptions and/or plea in abatement" and appellees "ten (10) days thereafter to file an amended answer;" then "all parties are thereafter permitted five (5) days to set a hearing on any unresolved immunity issues."

Appellant did replead, but only to add allegations that various actions were "done maliciously and in bad faith, and with full knowledge of their unlawful nature." Appellees set their special exceptions and plea in abatement for a November 18, 1985, hearing. (None of these pleadings were filed within the time frame set in the August 12 order.)

Our record contains no statement of facts recording the November 18, 1985, hearing. The briefs and record indicate that at that hearing appellant complained that the evidence appellees were attempting to present in support of their plea in abatement should be brought in conjunction with a motion for summary judgment. A short time after the hearing, a motion for summary judgment was filed, and, still later, affidavits in support of the summary judgment were submitted. Appellant also filed affidavits. Both parties briefed the trial court with legal memoranda. On March 3, 1986, the court signed the order dismissing all appellant's actions.

Appellant's complaints against UTMB, Brecht, and Manheimer were these: After some 12 years of employment at UTMB, Manheimer and Brecht fired him. The stated reason for dismissal was that budgetary shortfalls necessitated the elimination of appellant's position. Appellant alleged that the budget cuts were a mere "subterfuge" and that he was dismissed, at least in part, in retaliation for representing a fellow employee in an earlier grievance proceeding. Appellant further alleged that he had a contract of employment with UTMB consisting of a "Personnel Policy Manual" and an "Employee Handbook." He alleged that UTMB, Brecht, and Manheimer failed to follow UTMB's policies when they fired him without cause and without first utilizing progressive disciplinary procedures. He also alleged that the same defendants ignored UTMB's promises made in the "Employee Handbook" that "In the event of a reduction in force or a layoff the employee with the greatest length of service will be retained, all things being equal."

Additionally, appellant alleged that two co-workers, Shelagh M. Yospur and Catherine Contreras, under the instructions of Brecht and Manheimer, "intercepted" some of his private telephone conversations.

Appellant sought damages from UTMB for breach of his employment contract. He sought damages and equitable relief from UTMB for committing so-called constitutional torts [1] when it terminated him without following disciplinary procedures that would amount to due process and when it retaliated against appellant for exercising his rights to free speech (by representing a fellow employee). He also alleged that UTMB violated article 5154c, a portion of Texas' right-to-work statute. Tex.Rev.Civ.Stat. art. 5154c (Vernon 1971).

All claims against UTMB were dismissed when the court granted UTMB's plea in abatement holding that it had no jurisdic-

tion over UTMB. Appellant attacks this holding in his first point of error.

We hold the trial court properly dismissed appellant's action against UTMB. UTMB is clearly a state agency entitled to the same sovereign immunity enjoyed by the State of Texas. The Medical Branch is part of the University of Texas System. Tex.Educ.Code Ann. §§ 65.02(a)8, 74.001 (Vernon 1972 & Supp.1986). Branches of the University of Texas and other state universities have been held to be agencies of the State of Texas and to enjoy sovereign immunity. *E.g., Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976); *Morris v. Nowotny*, 323 S.W.2d 301 (Tex. Civ.App.—Austin 1959, writ ref'd n.r.e.), *cert. denied*, 361 U.S. 889, 80 S.Ct. 164, 4 L.Ed.2d 124 (1959).

A party must have legislative consent or statutory authorization before it can maintain a suit and recover a judgment that will operate to control state action, subject the state to liability, or affect the state's property rights and interests. *Director of the Department of Agriculture & Environment v. Printing Industries Association*, 600 S.W.2d 264 (Tex.1980).

Clearly, UTMB is immune from being sued for the damages appellant seeks. Appellant also prayed for equitable relief, in particular, an injunction ordering UTMB to reinstate him to his position with back pay. Appellant argues that this portion of his suit is an action by a person whose rights have been violated by the unlawful action of state officials. Such a person is allowed to bring suit to remedy the violation or prevent its occurrence. *Id.* at 265–66. The question remains whether such a plaintiff is allowed to bring his suit against a state agency rather than the individual officials who have allegedly violated his rights. We hold that when a plaintiff seeks injunctive relief that involves an ac-

---

1. In setting out the constitutional rights infringed upon by all of the appellees, appellant cites to both the federal and state constitutions. We acknowledge that Texas has a strong bill of rights, but we can find no Texas statute or case that provides a citizen the kind of redress af-

forded by 42 U.S.C. § 1983 or by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). There is no state "constitutional tort."

tivity of a state agency he must sue some individual in authority at that agency; he may not sue the agency itself.[2]

We arrive at this conclusion after examining supreme court opinions that distinguish between suits that seek to control the action of the state from suits that seek to control unlawful actions by state officials. In *Short v. W.T. Carter & Brother,* 133 Tex. 202, 126 S.W.2d 953 (1938), the plaintiff, who owned record title to more than 3,000 acres of land, sought to enjoin the state Commissioner of the General Land Office from issuing mineral leases to certain individuals. The plaintiff based his suit on the theory that the commissioner had no authority to issue those leases. After carefully interpreting the relevant statutes, the supreme court concluded that the commissioner did have statutory authority to decide who would be awarded mineral leases to the land. Next, the court concluded that since the commissioner was acting within the scope of his authority, a suit seeking to enjoin issuance of the leases was in effect a suit against the state that could not be maintained unless the state had consented to be sued. *Id.,* 126 S.W.2d at 962. The same mode of analysis was used in *Printing Industries Association,* 600 S.W.2d at 270; and *Bullock v. Hardin,* 578 S.W.2d 550 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.).

In contrast, the supreme court has held that when the alleged actions of the state official are not within his legal authority, then a suit to enjoin those actions is not considered a suit against the state. A plaintiff can maintain an action seeking to enjoin state officials from trespassing on land allegedly owned by plaintiff. *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151 (1960). A plaintiff can maintain a trespass to try title suit against individual state officials even when those officials assert rights of use and occupancy only as state officials and employees, acting for and on behalf of the state, and claim no right of

use and occupancy as individuals. *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579 (1961).

"The question is not whether respondents (state officials) were acting on behalf of the State to accomplish a proper governmental purpose but whether the action they were about to take is authorized by law." *Griffin v. Hawn,* 341 S.W.2d at 153.

The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination and protection of his rights, is not a suit against the State within the rule of immunity of the State from suit.

*Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945) (suit for declaratory judgment).

Appellant's suit depends upon the premise that the alleged actions of Brecht and Manheimer were unlawful. Unlawful or unauthorized actions are not considered acts of the state. The supreme court has stated that we must not consider his suit an attempt to control state action. By the same token, Bagg's suit cannot be brought against the state agency; it must be brought against the individuals who were acting unlawfully. If the alleged wrongful actions are not state actions, the state cannot be the proper party to sue.

■ Bagg also argues that even if the suit against UTMB can be dismissed, the plea in abatement was not the appropriate vehicle to arrive at that result because the plea in abatement is a dilatory plea and not a plea in bar. Perhaps a more appropriate label for UTMB's motion would be a plea to the jurisdiction. We cannot see that misnaming the plea invalidated the dismissal. "When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated." Tex.R. Civ.P. 71.

■ The final issue concerning the dismissal of UTMB concerns whether the

---

**2.** Typically, the individuals in authority sued are directors, members of a board of regents, or president, etc. In this case, the individuals sued were Bagg's supervisors. We need not consider

here whether an injunction ordering these persons to reinstate Bagg would be enforceable, and withhold an opinion on that matter.

state is immune from suit when the cause of action is based upon the Civil Rights Act of 1871. 42 U.S.C. § 1983.[3] This is a subject that, to our knowledge, has not been answered in Texas because most civil rights actions have been brought in federal courts, where the state is protected by the 11th Amendment. Courts of several states have decided that, although the United States Congress has created a "constitutional tort," the states retain the power to determine whether a plaintiff may sue a state in state court on claims arising out of that tort. *E.g., Fetterman v. University of Connecticut*, 192 Conn. 539, 473 A.2d 1176, 1182–83 (1984); *Thiboutot v. Maine*, 405 A.2d 230, 237 (Me.1979), *aff'd sub. nom. Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Kristensen v. Strinden*, 343 N.W.2d 67, 75–78 (N.D.1983); *Rains v. Washington*, 100 Wash.2d 660, 674 P.2d 165, 170 (1983); *Edgar v. Washington*, 92 Wash.2d 217, 221, 595 P.2d 534, 537–38 (1979), *cert. denied*, 444 U.S. 1077, 100 S.Ct. 1026, 62 L.Ed.2d 760 (1980). We agree with these holdings. Appellant does not contend that he has obtained permission to sue the state. UTMB was properly dismissed because it is immune from suit. Point of error one is overruled.

We turn now to the causes of action alleged against the individual appellees. Appellant sought damages from Brecht and Manheimer for tortiously interferring with his contract of employment with UTMB, for committing the same constitutional torts discussed above, and for violating article 5154c (right-to-work statute). He sought damages from Brecht, Manheimer, Yospur, and Contreras for tortiously invading his privacy by intercepting his phone calls. (Appellant states in his brief that he has waived any claim that appellees violated Texas wiretap laws.)

The court found that Brecht and Manheimer enjoyed official immunity that pro-tected them against being sued on "all state law claims" (presumedly the tortious interference claims, invasion of privacy claims and for any claims based on violations of appellant's state constitutional rights).[4] Those actions were dismissed when the court granted appellees' plea in abatement. (Appellant attacks this holding in point of error three). The court also found that appellant had failed to state a claim in alleging any violation of article 5154c and granted the individual appellees' plea in abatement. (Point of error four.) Finally, the court found that Brecht and Manheimer enjoyed "qualified good faith immunity" against appellant's 42 U.S.C. § 1983 claims because he had failed to plead why appellees were not immune, and granted summary judgment that appellant take nothing. (Point of error two.)

We agree with appellees that, to the extent Brecht and Manheimer were acting in an official capacity when they discharged appellant, they enjoy the same governmental immunity as does UTMB. *See Russell v. Edgewood Independent School District*, 406 S.W.2d 249, 252 (Tex. Civ.App.—San Antonio 1966, writ ref'd n.r. e.). However, appellant's petition states that he sues Brecht and Manheimer in both their official and individual capacities and alleges some actions that could not have been within the scope of their official duties, *e.g.*, ordering eavesdropping of telephone conversations. Official immunity only shields persons from suits complaining of official acts. Persons can still be sued in their individual capacities for wrongful unofficial acts. Appellees did not ask appellant, through special exceptions, to differentiate between official and unofficial actions. The court erred in dismissing all of appellant's state claim actions based on official immunity without regard to whether some of those claims could be main-

---

**3.** "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or im-munities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**4.** See note 1, *supra.*

tained against appellees in their individual capacities. We sustain point of error three.

 The trial court also dismissed appellant's article 5154c "claim" because he failed to state a claim for which relief should be granted. Section 6 of article 5154c states: "The provisions of the Act shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or conditions of work individually or through a representative that does not claim the right to strike." Tex.Rev.Civ.Stat. art. 5154c, § 6 (Vernon 1971). It has been held that a state agency cannot deny a public employee the right to be represented in a grievance proceeding. *Sayre v. Mullins*, 681 S.W.2d 25 (Tex.1984). However, we fail to see how this statute gives the representative any "claim" for damages against the agency or individuals who allegedly retaliate against that representative. *See Russell v. Edgewood Independent School District*, 406 S.W.2d 249, 251 (Tex.Civ.App.— San Antonio 1966, writ ref'd n.r.e.) (Independent school district cannot be sued for damages in tort under article 5154c or article 5207a). We would overrule point of error four but for the fact that appellant was not given the benefit of specific special exceptions and the opportunity to more clearly state his cause of action. Point of error four is sustained.

The trial court granted the individual appellees summary judgment on the basis that they enjoyed qualified good faith immunity from appellant's section 1983 claims. Under section 1983 an individual can be individually liable if he, under color of law, subjects (or causes to be subjected) a citizen to the deprivation of his constitutional rights. However, to protect officials from groundless section 1983 suits, the federal courts have recognized what is known as qualified good faith immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982).

 Under federal practice plaintiffs are required to specifically allege that the individual defendants violated clearly established law or else be subject to dismissal for failure to state a claim upon which relief can be granted. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 425 (1985). We agree with appellees that appellant has failed to so specifically plead. However, under Texas rules we think the proper procedure is to set out that failure in specific special exceptions. If and when those special exceptions are heard and granted, and if and when appellant fails to adequately amend, then his suit can be properly dismissed. *See Texas Department of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974). As we read the record, the trial court never ruled on appellees' special exceptions. Point of error two is sustained.

In conclusion, the trial court properly dismissed UTMB for want of jurisdiction and we affirm that part of the judgment. The court erred in summarily disposing of appellant's claims against the individual appellees and we reverse that part of the judgment.