BATTLESHIP TEXAS ADVISORY BOARD of the STATE OF TEXAS, Texas Parks and Wildlife Department, Texas Parks and Wildlife Commission, the Office of the Attorney General of the State of Texas, Appellants,

v.

TEXAS DYNAMICS, INC., Appellee.

No. A14–87–544–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 28, 1987.

Rehearing Denied Sept. 24, 1987.

Gus Lyons, Asst. Atty. Gen., Paul D. Rich, Asst. Atty., Austin, for appellants.

Charles J. Brink, Joan Marie Lucci Bain, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from the grant of a temporary injunction in which the trial court prohibited the named appellants from engaging in certain acts and ordered the named chairman of the Battleship Advisory Board and the named executive director of the Parks and Wildlife Department to perform certain acts. The dispositive issue on appeal is whether the trial court had jurisdiction to issue the injunction. We reverse and order the temporary injunction dissolved.

By Acts 1983, 68th Legis. Ch. 407, the legislature created the Battleship Texas Advisory Board and placed it under the jurisdiction of the Parks and Wildlife Department. Texas Parks and Wild. Code Ann. § 22.252 (Vernon Supp.1987). Its functions were to "advise the department on the operation and maintenance of the Battleship 'Texas'" and to "conduct fundraising activities to collect money for the operation and maintenance of the Battleship 'Texas'." The act further provided "[a]ll funds collected under this subsection must be transferred to the department to be used to operate and maintain the battleship." Texas Parks and Wild. Code Ann. § 22.254 (Vernon Supp.1987).

Following the appointment by the governor of the nine-member board, it began efforts to raise funds for its stated purpose. In March, 1985, the Advisory Board entered into a "Fund-Raising Agreement" with appellee, Texas Dynamics Incorporat-

ed. The agreement was for an eighteen-month duration and provided that Texas Dynamics would "carry out a fund-raising campaign to raise funds" for the ship restoration. Texas Dynamics was to receive ten percent of net contributions as consideration for its services. The agreement was signed by the chairman of the Advisory Board and by the president of Texas Dynamics and was approved by the attorney general.

Texas Dynamics, Inc., through its president, W. Douglas Williams, planned various fund raising activities in efforts to raise some $10,000,000 projected as the amount needed for restoration of the ship. One of such efforts was an appropriation from Congress, which was successful.

The 99th Congress, in making appropriations for the Department for Defense, through "Operation and Maintenance, Navy," provided "funds appropriated herein, not to exceed $5,080,000 shall be available for a grant to the Battleship Texas Advisory Board of the State of Texas for the restoration of the Battleship Texas." This was accomplished through Department of the Navy Grant N00014–87–G–0051, approved October 30, 1986, in that sum. The actual grant document was composed and signed by the grant officer on behalf of the United States Navy on November 21, 1986, and was made to "State of Texas, Battleship Advisory Board, Texas Parks and Wildlife Department." The purpose of the grant was for the restoration of the Battleship Texas, and it expressly provided the grant funds were to be so used. Concerning contingent fees, the grant provided:

(a) The Grantee warrants that no person or agency has been employed or retained to solicit or obtain the Grant upon an agreement or understanding for a contingent fee, except a bona fide employee or agency. For breach or violation of this warranty, the Government shall have the right to annul this Grant without liability or, in its discretion, to deduct from the Grant amount or otherwise recover, the full amount of the contingent fee.

(b) "Bona fide agency," as used in this clause, means an established commercial or selling agency, maintained for the purpose of securing business, that neither exerts nor proposes to exert improper influence to solicit or obtain Government business nor holds itself out as being able to obtain any Government business through improper influence.

"Bona fide employee," as used in this clause, means a person, employed and subject to the Grantee's supervision and control as to time, place and manner of performance, who neither exerts nor proposes to exert improper influence to solicit or obtain Government business nor holds out as being able to obtain any Government business through improper influence.

"Contingent fee," as used in this clause, means any commission, percentage, brokerage, or other fee that is contingent upon the success that a person or concern has in securing Government business.

"Improper influence," as used in this clause, means any influence that induces or tends to induce a Government employee or officer to give consideration or to act on any basis other than the merits of this matter.

When it was determined that Texas Dynamics was claiming its right to ten percent of the grant, various disputes arose, the culmination of which was that the Navy temporarily withdrew the grant until the state could resolve the controversy. The subject suit resulted. Appellee sought, among other remedies, a declaratory judgment, general and exemplary damages, attorneys' fees and interest. In its plea for an injunction, appellee sought an injunction, "enjoining Defendants and their individual members," from the following:

a. Making any further public statements, or other publications, to any person, to the effect that Plaintiff, TDI, is violating the law of this State, or of the United States, by seeking to enforce its rights under its contract;

b. Transferring, expending, or otherwise diverting any funds currently in the possession of the BTAB, the P.W.

Comm'n, that might be used to compensate Plaintiff for its compensation due under the contract;

c. Taking any act to obtain the Navy Grant as a purported new Grant, for the purpose of depriving Plaintiff of its commission due said Grant.

Additionally, appellee sought "a Temporary Injunction directing Defendants" as follows:

a. Directing BTAB through its Chairman HAIR to execute and accept the Navy Grant and return it to the Department of Navy;

b. Directing that all funds received under the Grant and/or appropriation be deposited into the registry of this Court;

c. Directing that the $140,000.00 transferred to P.W. DEPT. on December 15, 1986 be returned to the BTAB account from which it was withdrawn until a final judgment is entered in this cause.

Following a lengthy hearing, the trial court entered a sweeping order, portions of which provided:

ORDERED that the Battleship Texas Advisory Board of the State of Texas, Texas Parks and Wildlife Department, Texas Parks and Wildlife Commission and the Office of the Attorney General of the State of Texas, their officers, agents, members, employees, attorneys and other representatives be and hereby are commanded forthwith to desist and refrain from the following acts until final judgment is ordered in this cause:

(1) engaging in any acts or further attempts to have to [sic] the Grant from the Department of the Navy reissued, redirected, or diverted through the Parks and Wildlife Department, or any other entity, until a final judgment is entered in this cause,

(2) engaging in any acts aimed at soliciting or otherwise requesting from any U.S. Congressman, U.S. Department of Navy Official, or any member of their staffs,

(a) the reissuance of the Grant,

(b) amendment of the Congressional appropriation,

(3) conspiring with each other to accomplish either of the above purposes.

(4) seeking to alter the status of the Five Million Eighty Thousand Dollars, ($5,080,000.00) appropriated by Congress to the Battleship Texas Advisory Board of the State of Texas in any manner, including but not limited to:

(a) endorsing or otherwise accepting any substitute Grant;

(b) receiving and/or depositing the Grant funds in any account other than into the registry of this Court;

(c) requesting, assisting with, or soliciting any amendments to the current legislation;

(d) meeting with U.S. Congressmen, or any member of their staffs for the purpose of planning, drafting or preparing substitute legislation, and

(e) meeting with any U.S. or State government official for the purpose of planning, drafting, preparing or authorizing the reissuance of the Grant directly to Texas Parks and Wildlife Department, or any other entity.

IT IS FURTHER ORDERED that if, during the pendancy [sic] of this injunction, the Department of the Navy elects to forward the funds through Parks and Wildlife Department, or any other entity, said agency or Defendant or its agents, is hereby commanded, upon receipt of said Grant funds to immediately deposit said funds into the registry of this Court until a final judgment is entered herein.

IT IS FURTHER ORDERED that Denny Hair, Chairman of the Battleship Texas Advisory Board be and hereby is commanded to execute Grant No. 0014–87–G–0051 and return same to the Department of the Navy in the manner and fashion directed by the terms of the Grant.

IT IS FURTHER ORDERED that Denny Hair, Chairman, Battleship Texas Advisory Board, upon receipt of said funds, be and hereby is commanded to deposit same into the registry of this Court until a final judgment is entered herein.

IT IS FURTHER ORDERED that Charles Travis, Executive Director of Re-

spondent Texas Parks and Wildlife Department be and hereby is commanded to return the sum of One Hundred Forty Thousand and No/100 Dollars ($140,000.00) to the account of the Battleship Texas Advisory Board and the Battleship Texas Advisory Board is further Ordered and commanded to retain said sum in its account until a final judgment is entered herein.

It is obvious that the order seeks to control the actions of the state and of individuals not named as parties to the suit. It is undisputed that appellee did not have legislative permission to bring the suit.

Prior to trial appellants called into question the jurisdiction of the trial court by two written motions which the trial court denied. The motions not only challenged appellee's right to bring the suit because of a lack of legislative authorization, but also pointed out that the suit was erroneously brought against state agencies rather than individuals in authority at the agency. The motions were again forcefully argued just prior to trial and were again overruled by the trial court.

In three points of error appellants contest, on related grounds, the jurisdiction of the trial court to issue the injunction.

It is well settled that a party must have legislative consent or statutory authorization before it can maintain a suit and recover a judgment that will operate to control state action, subject the state to liability, or affect the state's property rights and interests. *Director of the Department of Agriculture & Environment v. Printing Industries Association*, 600 S.W.2d 264 (Tex. 1980); *Bagg v. University of Texas Medical Branch at Galveston*, 726 S.W.2d 582 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd. n.r.e.). It is undisputed that each named appellant is a state agency and entitled to the same sovereign immunity as the State of Texas.

■ Appellees contend the trial court "properly exercised jurisdiction over this controversy because it is a suit against state officials to prevent unlawful and unauthorized actions by such officials, which wrongfully deprive plaintiff of its rights

and as such is a well recognized exception to the doctrine of sovereign immunity." Unlawful or unauthorized actions are not considered acts of the state.

We recognize the exception relied upon by appellee. Recently the Supreme Court of Texas reaffirmed the rule of sovereign immunity and appellee's asserted exception stating:

[A] suit brought to control State actions or to subject the State to liability is not maintainable without legislative consent or statutory authorization. ... [A]n entity or person whose rights have been violated by the unlawful action of a State official, may bring suit to remedy the violation or prevent its occurrence, and such suit is not a suit against the State requiring legislative or statutory authorization. (Citations omitted.)

*Director of the Department of Agriculture and Environment v. Printing Industries Association of Texas*, 600 S.W.2d 264, 265–66 (Tex.1980).

There the issue before the court was whether the trial court had jurisdiction to issue an injunction sought by the printers against state agencies to prohibit their purchasing and using printing equipment. The trial court dismissed the suit for lack of jurisdiction. The court of civil appeals reversed, applying the rule appellee asserts to us. The supreme court reversed the court of civil appeals and held the trial court was without jurisdiction. It is important to note the simplicity with which the supreme court stated the issue: "the Printers may maintain this suit for injunctive relief only if the printing activities of State agencies are unauthorized." Thus in the case before us, appellee may maintain this suit for injunctive relief only if the activities of the state agencies are unauthorized.

■ Appellee's primary argument is that the act of the advisory board in failing to accept the grant was unauthorized because the board had no authority not to accept it. We do not agree. First, the statute promulgating the functions of the advisory board does not command that the Board accept all funds offered. Further, the stat-

ute commands that *all* funds collected "must be transferred to the department to be used to operate and maintain the battleship." More important, we believe, are the terms of the appropriation and the grant. As stated above, the expressed purpose of the appropriation was "for the restoration of the Battleship Texas." The terms of the actual grant stipulated that "[f]unds provided by this Grant are to be utilized wholly and exclusively for the purpose [of restoration of the Battleship Texas]." In the provisions for payment of the grant monies, the grant provided that "[u]pon submission of invoices by the Grantee *in accordance with the provision of this grant,* the amount of $5,080,000 shall be paid *as set forth in attachment Number 1.*" (Emphasis added.) Attachment Number 1 to the grant lists the total breakdown of the amounts of money required for "Repair and Restoration," which total $5,080,000. None of this amount is earmarked or budgeted for the ten percent fees for appellee. Further, under the "ACCOUNTABILITY" section of the grant, the grantee is required to warrant that: "(1) [a]ll funds under this grant will be used to pay for actual cash expenses incurred in the restoration of the Battleship Texas; [and] (2) adequate accounting records will be maintained to show the disbursement of all grant funds." Still further the grant contained the provisions quoted above concerning contingent fees where the grantee warranted certain facts. Finally, the grant provided "[t]his Grant may be revoked in whole or in part by the Grants Officer after consultation and agreement with the Grantee...." In view of all the above, we hold the action of the Advisory Board in failing to accept the grant was not unlawful or unauthorized. This conclusion renders it unnecessary to discuss the other acts of the Parks and Wildlife Board, the Parks and Wildlife Commission and the Attorney General's Office which appellee contends were unauthorized.

■ Appellants further contend the trial court erred in enjoining persons who were not parties to the action and that the injunction "does not enjoin proper parties." Specifically, appellants contend the court erred in ordering Denny Hair, chairman of the Battleship Texas Advisory Board, and Charles Travis, Executive Director of the Texas Parks and Wildlife Department, to perform those acts as above recited from the injunctive order. Further appellants contend that it was improper for appellee to sue and the court to enjoin state agencies rather than some individual in authority at the agency. We agree.

The hearing on appellee's plea for temporary injunction began on June 2, 1987, and concluded on June 5, 1987. Neither Hair nor Travis were named as a defendant in the suit until appellee filed its first amended petition on June 26, 1987, and the named individuals were not served with citation until July 2, 1987, and July 7, 1987, respectively. Each filed answer on July 24, 1987. Therefore, at the time of the hearing neither Hair nor Travis was before the court as a party to the action. If either or both were bound by the injunction it would be only because of his position as an officer, agent or employee of the state agency which was a party to the action. Tex.R. Civ.P. 681 and 683. The only parties to the cause of action through which either or both could have been enjoined were the Battleship Texas Advisory Board and the Texas Parks and Wildlife Department. We have previously held, however, that "when a plaintiff seeks injunctive relief that involves an activity of a state agency he must sue some individual in authority at that agency; he may not sue the agency itself." *Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582 at 584–85 (Tex. App.—Houston [14th Dist.] 1987).

Appellee argues, however, our holding in *Bagg* "should be limited to circumstances where an injunction against a particular official is sufficient to prevent the continuation of the wrong." Appellee asserts the evidence in this case justifies bringing suit against the entire state agency rather than a particular individual. Appellee then cites numerous cases where injunctions against state agencies have been upheld.

We acknowledge these cases, but appellee does not point out any such case where the jurisdictional issue present in *Bagg* and

in this case was asserted. Neither has our research revealed any. We adhere to our holding in *Bagg*. Accordingly, we hold that the trial court was in error in granting the injunction.

It is unfortunate that the situation giving rise to this controversy ever developed. Failure of the parties to resolve the issue has placed in severe jeopardy the much-needed funds for the Battleship Texas restoration. However, the only issue before this court is one of jurisdiction.

The judgment is reversed and the injunction is ordered dissolved.