TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-99-00774-CV






Chester William Ingram, Jr., M.D., Appellant



v.



Wayne Scott, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-02199, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING






 The motion for rehearing of appellee is granted, and the opinion and judgment of
the Court dated May 11, 2000, are withdrawn.

 Appellant Chester William Ingram, Jr. appeals the district court's granting of
summary judgment in favor of appellee Wayne Scott, executive director of the Texas Department
of Criminal Justice (the Department). We will reverse the district court's judgment and remand
the cause for further proceedings.

 On rehearing, Scott argues this Court erred in issuing its opinion after the
submission date but before he filed an appellee's brief. He further argues that Ingram's motion
for summary judgment failed to give notice of a hearing and that he never received Ingram's
requests for admissions. In the interest of justice, we will withdraw our opinion and judgment
of May 11, 2000, and substitute this opinion in its place.


Time line and procedural background

 The district court signed an order granting summary judgment for Scott and
dismissing Ingram's claims on October 11, 1999. Ingram filed his notice of appeal on November
5 and his appellant's brief on January 24, 2000. Ingram certified in his brief that he had mailed
a copy to "the Attorney General of Texas" via first-class mail. The first volume of the clerk's
record was filed on December 2, 1999. On December 16 and 23, this Court notified the parties
that the first and second supplemental clerk's records had been filed. On February 8, this Court
notified Ingram and Scott that Ingram's appellant's brief had been filed on January 24. On March
9, this Court sent both parties notice that the cause was set for submission on briefs on April 24,
2000. On the Court's own motion, a third supplemental clerk's record was filed on April 20. 
The Court issued its opinion on May 11.

 Scott checked out the first volume of the clerk's record and a copy of Ingram's
appellant's brief on March 13. The record was due to be returned to this Court on March 28; it
was returned on April 7. Scott checked out the entire record, including the three supplemental
records, on May 2 and returned it on May 25, seven days after its May 18 due date. Scott sent
this Court a letter on April 19, stating he would be unable to file his appellee's brief by the
submission date because he would be in trial the week of April 24. He informed this Court he
would file the brief on May 5. On May 3, Scott sent another letter stating he needed more time
because the record had been supplemented and stating his brief would be filed on May 18. 


Should Scott have been granted more time to file his brief?

 Scott asserts that he did not receive a copy of Ingram's appellant's brief. Ingram
certified that he sent his brief to the Office of the Attorney General, but the certification does not
state whether the brief was directed to a particular attorney or division of the office. However,
Scott was notified by this Court on February 8 that Ingram's brief had been filed and on March
9 that the cause was set for submission on April 24. Scott checked out the first volume of the
record and a copy of Ingram's brief more than a month before the submission date.

 Scott also contends he needed more time to prepare his brief due to difficulties
reviewing the complete record. (1) Scott had the incomplete record from March 13 through April
7, and he states he "discovered certain crucial documents were missing" from the record when
he was preparing his brief. He did not contact this Court or the district court in an attempt to
have the record supplemented until April 18, six days before the submission date. At that time,
he learned this Court had already discovered the record was missing documents and had, on its
own motion, requested that the record be supplemented a third time.

 Under the Rules of Appellate Procedure, an appellee's brief is due thirty days after
the appellant's brief is filed. See Tex. R. App. P. 38.6(b). Courts of appeals are required to give
parties at least twenty-one days notice of the submission date of a cause. See id. 39.9. While this
Court does not have formal local rules of procedure, we have issued a memorandum setting out
general rules to be followed when practicing before the Court. See Memorandum on Practice
Before the Court of Appeals for the Third District of Texas. This Court does not permit the filing
of motions for extension of time to file an appellee's brief. See id. at note 59; see also Tex. R.
App. P. 38.6(d). An appellee's brief may be filed without leave of court at any time, but "[t]he
appellee's failure to file a brief will not delay submission or decision of an appeal." See
Memorandum at note 59.

 While Scott may have been pressed for time during the end of April, when he
began to take steps to review the supplemented record, he had three months' notice of the filing
of Ingram's brief, almost two months' notice of the submission date, and more than one month's
notice that the record was incomplete. We believe this was sufficient notice and time for Scott
to complete his brief. We are not obligated to delay the decision of an appeal in anticipation of
untimely filings. See id.


Did the district court err in granting Scott's motion for summary judgment?

 Ingram is an inmate in the custody of the Department. He sued Scott in Scott's
personal and official capacities, alleging Scott was violating section 501.008 of the Texas
Government Code, (2) which governs the Department's development of a system to handle inmate
grievances. See Tex. Gov't Code Ann. § 501.008 (Tex. 1998). Ingram filed a brief in support
of his petition for writ of mandamus and attached to his brief twenty-six exhibits, mainly
consisting of denied inmate grievances.

 Scott and Ingram both moved for summary judgment. The trial court granted
Scott's motion, dismissing Ingram's claims. Ingram appeals, arguing the court erred (1) in
granting Scott's motion, (2) in not granting Ingram's motion for summary judgment, and (3) in
not compelling Scott to comply with Ingram's discovery requests.


Standard of Review


 A mandamus action initiated in a trial court is subject to appeal as any other civil
suit. See Anderson v. City of Seven Points, 806 S.W.2d 791, 792 n.1 (Tex. 1991); University of
Tex. Law Sch. v. Texas Legal Found., 958 S.W.2d 479, 481 (Tex. App.--Austin 1997, no pet.). 
Therefore, we do not review a trial court's granting or denial of summary judgment under the
abuse of discretion standard applicable to mandamus actions initiated in appellate courts; instead
we review such decisions under standards generally applicable to motions for summary judgment
in other civil suits. See University of Tex. Law Sch., 958 S.W.2d at 481.

 Summary judgment is properly granted only when the movant establishes that there
are no genuine issues of material fact to be decided and that he is entitled to judgment as a matter
of law. See Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.
1991); Memorial Med. Ctr. v. Howard, 975 S.W.2d 691, 692 (Tex. App.--Austin 1998, pet.
denied). A defendant seeking summary judgment must negate as a matter of law at least one
element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each
element of an affirmative defense. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995). If the defendant produces evidence establishing his right to summary judgment, the burden
shifts to the plaintiff to present evidence raising a fact issue. See id.

 In reviewing the grant of summary judgment, we view the evidence in the light
most favorable to the non-movant and make every reasonable inference and resolve all doubts in
favor of the non-movant. See id.; Nixon v. Mr. Property Management Co., 690 S.W.2d 546,
548-49 (Tex. 1985); Howard, 975 S.W.2d at 693. When the trial court's order granting summary
judgment does not specify the grounds relied upon, we will affirm the judgment if it is supported
by any of the grounds put forth by the movant. See Bradley v. State ex rel. White, 990 S.W.2d
245, 247 (Tex. 1999); Howard, 957 S.W.2d at 693.

 Scott moved for summary judgment on the grounds that (1) Ingram's claims had
no basis in law, (2) the complained-of procedures were not required to be in writing, (3) Ingram
raised no constitutional claims and therefore could not complain that prison regulations were being
violated, (4) Scott was protected by official immunity, and (5) Scott was protected by sovereign
immunity as far as he was sued in his official capacity. (3)

 Ingram complains in issues two and three that the trial court erred in granting
summary judgment for Scott because Ingram at a minimum established the existence of a genuine
issue of material fact. Further, Ingram argues the defenses of official and sovereign immunity are
not appropriate defenses in this case. We will first examine whether Scott established the
affirmative defenses of official and sovereign immunity.


Is Scott shielded by official and sovereign immunity?

 Official immunity is an affirmative defense, and the defendant has the burden to
establish all the elements of the defense. See City of Lancaster v. Chambers, 883 S.W.2d 650,
653 (Tex. 1994). A government employee is entitled to official immunity from suit arising from
the performance of (1) his discretionary duties, as opposed to ministerial acts, (2) in good faith
as long as (3) he is acting within the scope of his authority. See id. A ministerial act is one
prescribed and defined by the law with such precision and certainty as to leave nothing to the
exercise of discretion or judgment. See id. at 654. In other words, an action involving personal
deliberation, decision, and judgment is discretionary; an action requiring obedience to orders or
the performance of a mandatory duty is ministerial. See id.

 In his motion for summary judgment, Scott asserted his entitlement to official
immunity and set out the elements of the defense, concluding that "[b]ecause [Ingram] cannot
prove that any statutes, rules, or procedures are being violated, Defendant Scott is entitled to
official immunity." 

 It was Scott's burden to establish his entitlement to official immunity. See id. at
653. Scott presented no evidence or argument to establish the elements of the defense. His
conclusory statement that he is entitled to the defense because Ingram could not prove a statutory
violation does not address the elements of official immunity and does not meet his burden.

 Further, the defense of official immunity is inapplicable because Ingram is seeking
to compel Scott to perform a non-discretionary act. Section 501.008(b) requires that the
Department's grievance system "must provide procedures . . . for an inmate to identify evidence
to substantiate the inmate's claim." Tex. Gov't Code Ann. § 501.008(b) (emphasis added). 
While Scott has discretion to decide the structure of those procedures, it is mandatory that such
procedures be in place. Official immunity is not a defense to a suit arising out of the non-performance of a ministerial act. See Chambers, 883 S.W.2d at 653. Scott has not demonstrated
that summary judgment is proper based on the affirmative defense of official immunity.

 In asserting sovereign immunity as a defense, Scott again set out the basic rules of
law governing the doctrine and asserted his entitlement to the defense to the extent he was sued
in his official capacity. Ingram responded that, because he was not seeking monetary damages,
sovereign immunity should not apply.

 Initially, we note Scott did not establish his entitlement to the defense of sovereign
immunity. Furthermore, we do not believe Scott established that sovereign immunity could apply
to this case. Generally, the State is immune from suit and from liability. See Green Int'l, Inc.
v. State, 877 S.W.2d 428, 432 (Tex. App.--Austin 1994, writ dism'd by agr.). State employees
acting in their official capacities are also shielded. See Bagg v. University of Tex. Med. Branch,
726 S.W.2d 582, 586 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.). However,
Ingram's claims are not the sort against which sovereign immunity would shield Scott. Scott
cannot, as a public official, refuse to comply with a mandatory statutory obligation and then claim
he is protected from a petition for writ of mandamus seeking to compel his compliance. Scott did
not demonstrate his entitlement to sovereign immunity and the trial court's granting of summary
judgment could not properly have rested upon that defense.


Did Scott establish he was entitled to summary judgment on the merits of Ingram's claims?

 Ingram sought to compel Scott to comply with section 501.008(b)(1) of the Texas
Government Code, which requires the Department to provide procedures for inmates to identify
evidence to substantiate their claims. (4) See Tex. Gov't Code Ann. § 501.008(b)(1). Ingram
complained that no such procedures were in place. 

 Attached to Ingram's petition were the following exhibits: a letter from Ingram to
Scott asking him to direct the warden of the Coffield Unit to comply with section 501.008; letters
from Ingram and Ingram's sister to Scott asking Scott to furnish them with copies of the
procedures under which inmates could identify substantiating evidence; and twenty-two exhibits
consisting of denied inmate grievances. The reasons given for denying the grievances are short
and without significant explanation, generally stating a Department officer had explained or denied
the alleged incidents. In denying appeals of the grievances, the decision maker usually stated,
"You have provided nothing at this level to justify further inquiry of the matter." On at least two
forms, Ingram asked for the procedures mandated by section 501.008; neither form's response
indicates Ingram was provided with the procedures. One form contains the reply, "THIS IS NOT
A GRIEVANCE BUT A REQUEST FOR A GRIEVANCE PROCEDURE. IN THE FUTURE
SEND YOUR REQUEST IN THE FORM OF AN I 60 YOU'LL RECIEVE [sic] YOUR
REQUEST IN A MORE TIMELY MANNER."

 Scott moved for summary judgment on the grounds that Ingram's "allegations that
[the Department] is not complying with section 501.008 of the Texas Government Code are
insufficient to carry [his] evidentiary burden." Scott's motion for summary judgment argued:


[Ingram] further alleges that Defendant Scott is not in compliance with
§ 501.008(b)(1) because there are no written procedures implementing
§ 501.008(b)(1). However, the statute does not require the procedures to be
written. It only requires that the grievance system must provide procedures for an
inmate to identify evidence to substantiate the inmate's claim. Inmates are advised
of the grievance process and procedure in their offender handbook which they
receive upon their first commitment to a [Department] unit.


. . . .


The current grievance procedure allows all grievance allegations to be thoroughly
investigated and substantiated if there is evidence. . . . The grievance officer
thoroughly investigates the inmate's allegations and substantiates them if evidence
is found. Therefore, the current inmate grievance procedures fully and completely
comply with § 501.008 of the Texas Government Code.


. . . . 


[Ingram] alleges violations of [Department] policy. Specifically, [Ingram] claims
that [Scott] violated a [Department] directive by not investigating grievances. 
[Ingram] characterizes the failure to follow policy as an abuse of authority. 
Violations of prison regulations, without more, does [sic] not state a constitutional
violation. An assertion that prison officials failed to follow departmental
regulation must, on its own merit, state a constitutional claim. [Ingram] has not
shown a corresponding violation of his constitutional rights with respect to his
claims that prison regulations were not followed.



(Internal citations omitted.)

 As supporting evidence, Scott attached (1) a May 21, 1989 order of the courts of
the Eastern and Southern District of Texas stating the courts had certified the Department's
grievance procedure, (5) and (2) an affidavit by Jane Cockerham, assistant administrator of the
Department's inmate grievance procedure, in which she set out the framework of the procedure
and stated, "The procedure which exists for an offender to identify evidence to substantiate his
claim is through written formal grievance with attachments."

 Ingram responded to Scott's motion, arguing that procedures for identifying
substantiating evidence must be in writing. Ingram took issue with Scott's explanation of the
grievance procedure, specifically criticizing Scott's statement that grievance investigators may,
acting under their discretion, interview witnesses, obtain documents, or view other information. 
Ingram argued that if the unwritten procedures leave the examination of substantiating evidence
to an investigating officer's discretion, they run afoul of section 501.008(b)'s mandatory language
that the Department must provide such procedures. Ingram alleged that a grievance investigator
told Ingram that he did not personally investigate all the inmate grievances he received. Instead,
the investigator sent forms to supervisors, who chose whether to review statements, records, or
other evidence. The investigator reviewed his procedures manual and was unable to find
procedures governing substantiating evidence. Ingram stated, "Assuming, arguendo, that the
requisite policy does exist, it is not in writing and not known to inmates or [Department]
Grievance Investigators, or if in writing, it is so badly written that a reasonable person can not
discern its meaning or mechanism. Therefore it does not comply with [section] 501.008." 

 Ingram objected to Cockerham's affidavit on the grounds it was not written from
personal knowledge and contained conclusory statements, and argued her affidavit admitted that
no procedure for identifying evidence existed. Ingram further alleged that he never received the
offender orientation handbook to which Scott referred in his motion for summary judgment. 
Finally, Ingram stated he made no constitutional claims.

 Ingram attached as evidence to his response to Scott's motion an executive directive
written by Scott that describes the development and annual review of procedures and policies (ED-01.21). ED-01.21 defines various rules, policies, directives, and procedures governing operations
of the Department and its facilities. ED-01.21 states that Board Rules shall be "published in the
Texas Administrative Code," Board Policies are signed by the Department chairman and
"distributed by Executive Services," Executive Directives are signed by the executive director and
distributed by Executive Services or the Human Resources department, and Administrative
Directives are "distributed by Executive Services." Further, ED-01.21 defines Division
Directives and Operational Procedures, referring as examples to specific directives and procedures
and their location in manuals. ED-01.21 explains that new or changed policies shall be proposed
by "sending the proposal in writing." If policies are revised or added, a draft is distributed for
review and notice of the final policy is sent out via electronic mail. Finally, ED-01.21 provides
as follows: each policy is reviewed annually; the Departmental Policy and Operations Manual
"includes selected board rules and all board policies, executive directives, and administrative
directives"; the Personnel Manual "includes selected board rules and board policies that relate to
human resources and all executive directives that are also known as personnel directives"; and
each division or department reviews, maintains, and distributes its own policies and procedures
and keeps its Division and Operational Manual current with Executive Services.

 Ingram attached as evidence his affidavit in which he recites the subject of his
alleged conversation with the grievance investigator and their search for procedures in the manual. 
Ingram states that he and the investigator "both looked at [the investigator's] policy and procedure
manual but neither could identify any such procedure. [The investigator] admitted that no such
procedure exists as far as he could tell. He did not know of any procedure for an inmate to
identify evidence to substantiate the inmate's claim."

 Finally, Ingram attached as evidence a grievance form that Ingram claimed showed
a key witness was never interviewed. The grievance form allows an inmate to set out (1) how and
when informal resolution was attempted, (2) details of the grievance, including "documentation,
name of any witnesses supporting [the] claim and date of incident," and (3) action requested. The
inmate named several witnesses, including Department personnel. The Department denied the
grievance and the inmate appealed, stating the main witness was never contacted about the
incident. The inmate alleged no investigation was done and he continued to have the same
problem. The appeal was denied based on Department records and statements by two Department
employees. 

 In reviewing the granting of summary judgment for Scott, we view the evidence
and arguments in the light most favorable to Ingram. See Centeq Realty, 899 S.W.2d at 197;
Nixon, 690 S.W.2d at 548-49; Howard, 975 S.W.2d at 693. Viewed in this light, Scott's motion
and evidence do not establish his entitlement to judgment as a matter of law.

 Scott's grounds for seeking summary judgment boil down to the argument that the
procedures need not be in writing under the statute. However, Scott produced no evidence that
the Department has any unwritten procedures, such as Scott's affidavit or the affidavit of any other
Department employee with knowledge of such unwritten procedures. Moreover, Scott did not
produce any evidence that these specific unwritten procedures exist. In fact, his motion for
summary judgment does not even go so far as to actually allege that the procedures exist in an
unwritten form. Cockerham's explanation of the grievance process does not establish as a matter
of law that procedures for identifying evidence are in place.

 Furthermore, we believe Scott's contention that the procedures do not have to be
in writing flies in the face of common sense. The Department has personnel manuals, policy and
operations manuals, and division and operational manuals containing a myriad of regulations and
procedures governing an inmate's life. Proposed changes or additions to Department policies
must be submitted in writing and go through a substantial review and editing process. Section
2001.004 of the Administrative Procedure Act (the APA) requires agencies to adopt "rules of
practice stating the nature and requirements of all available formal and informal procedures," and
to make available to the public "all rules and other written statements of policy or interpretations
that are prepared, adopted, or used by the agency in discharging its functions." Tex. Gov't Code
Ann. § 2001.004(1), (2) (West Supp. 2000). The Texas Administrative Code provides that "[state
jail facility] administrators shall ensure that there is a written offender grievance procedure that
is made available to all offenders which includes at least one level of appeal." 37 Tex. Admin.
Code § 157.39(11) (West 1999). While we recognize that neither the APA nor section 157.39(11)
applies to this division of the Department, see Tex. Gov't Code Ann. § 2001.226, we believe they
support our view that Department procedures must be in writing. 

 On rehearing, Scott contends that the record is replete with evidence that written
procedures exist for the identification of substantiating evidence. As evidence, Scott points to a
policy that requires the grievance procedure administrator to establish a specific directive
concerning the grievance procedure; the requirement that instructions on using the grievance
procedure be established and distributed to inmates; a directive that (1) states written instructions
on the use of the grievance procedure are available at department libraries, (2) states inmates may
seek assistance on using the grievance forms from department staff, and (3) establishes a
comprehensive structure for handling inmate grievances; and the grievance form an inmate uses
to file a grievance and which instructs the inmate to "[s]tate Grievance (include documentation,
name of any witnesses supporting your claim and date of incident . . .)." Scott argues that the
number of filed grievances indicates inmates understand how to identify evidence. We are not
persuaded by this argument.

 Scott argues the record shows the mandated procedures exist, but never sets out the
specific procedures. The fact that an overall grievance procedure has been developed does not
lead to the necessary conclusion that a specific procedure for identifying evidence also has been
developed. Nor do conclusory statements such as, "The procedure which exists for an offender
to identify evidence to substantiate his claim is through written formal grievance with
attachments" set out the procedure an inmate should actually use. That numerous inmates have
attempted to identify supporting evidence does not relieve Scott of the duty to develop a specific
procedure. Even if the inmates have identified evidence in exactly the way Scott would require,
it does not eliminate his duty to develop a written procedure that applies to this very specific step
in the inmate grievance system. Merely alleging that the mandated procedures exist without
specifying where and what they are does not establish their existence. More importantly, Scott
has not shown as a matter of law that the required procedures actually exist. (6) If written
procedures that specifically govern the identification of substantiating evidence do exist within the
department's grievance procedure, it should be simple for Scott to move for summary judgment
by simply explaining the location and content of those procedures and attaching a copy of the
procedures to his motion.

 We hold that Scott's motion for summary judgment was insufficient to entitle him
to judgment on Ingram's claims. We sustain Ingram's second and third issues.


Did the trial court err in denying Ingram's motion for summary judgment?


 Ingram filed his own motion for summary judgment, in which he alleged that Scott
had not answered Ingram's requests for admissions, resulting in the requests being deemed
admitted. Ingram attached as evidence the unanswered requests for admissions and the certified
mail receipt showing the discovery requests were received by the Office of the Attorney General,
Scott's answers to Ingram's first set of interrogatories, and Scott's response to Ingram's request
for production. In his first issue, Ingram contends the trial court should have granted summary
judgment in his favor because Scott's deemed admissions proved Ingram's claims. (7)

 Ingram's motion for summary judgment largely relies on the requests for
admissions he sought to have deemed admitted. However, in his motion for rehearing, Scott
states that he never received the requests for admissions or notice of a hearing on Ingram's motion
for summary judgment. Ingram's requests for admissions were received by the Office of the
Attorney General, but Scott asserts the requests never made their way to the specific attorney
assigned to the case. (8) Ingram's motion for summary judgment does not include a setting of a
hearing on the motion, and Scott contends he therefore had no time frame that would have
required him to answer Ingram's motion. Ingram responds that he did set a hearing and that Scott
had notice of that hearing. Because questions have been raised as to whether Scott received the
requests for admissions and whether Scott should have answered Ingram's motion, in the interest
of justice we will remand the cause to the district court for determinations of notice and the
propriety of the deemed admissions and for evaluation of Ingram's motion for summary judgment. 
We overrule Ingram's first issue.


Should the trial court have granted Ingram's motion to compel discovery responses?

 In his fourth issue, Ingram argues the trial court erred in denying his motion to
compel Scott to comply with Ingram's discovery requests. We disagree.

 A trial court's decision on discovery matters is reviewed under an abuse of
discretion standard. See Markham v. Diversified Land & Exploration Co., 973 S.W.2d 437, 441
(Tex. App.--Austin 1998, pet. denied). Ingram's motion to compel does not appear in the record
before us. The docket sheet indicates the motion was filed on February 22, 1999, but does not
reflect that it was ever ruled on. It is not clear from the record what Ingram sought from Scott
and it is not clear the motion was brought to the district court's attention. Ingram has not
demonstrated the district court abused its discretion in refusing to rule on his motion to compel. 
We overrule Ingram's fourth issue.


Conclusion

 We sustain Ingram's second and third issues. We overrule issues one and four. 
We reverse the district court's judgment granting summary judgment for Scott and remand the
cause to the district court for further proceedings.



 
 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: June 22, 2000

Do Not Publish

1. Scott states he was unable to review the complete record until after the week of April 24
because it was checked out. This is not entirely correct. The record was unavailable not because
it was already checked out, but because the Court was using the record to prepare its opinion.
2. In July 1997, Ingram filed a petition for writ of mandamus with the supreme court, which
denied his petition for lack of jurisdiction. Ingram then filed a petition for writ of mandamus in
the district court of Walker County, which transferred the cause to Travis County. 
3. Before filing his motion for summary judgment, Scott sought to have Ingram's suit
dismissed as frivolous under section 14.003 of the Texas Civil Practice and Remedies Code. See
Tex. Civ. Prac. & Rem. Code Ann. § 14.003(a)(2) (West Supp. 2000). Ingram pointed out that
his suit, while brought pro se, was not brought in forma pauperis and therefore was not subject
to dismissal under section 14.003. See id. § 14.002(a). 
4. In relevant part, section 501.008 reads as follows:


(a) The department shall develop and maintain a system for the resolution of
grievances by inmates housed in facilities operated by the department or under
contract with the department that qualifies for certification under 42 U.S.C.
Section 1997e and the department shall obtain and maintain certification under
that section. . . . 


(b) The grievance system must provide procedures:


 (1) for an inmate to identify evidence to substantiate the inmate's claim; and 


 (2) for an inmate to receive all formal written responses to the inmate's
grievance.


Tex. Gov't Code Ann. § 501.008. 


 Initially, Ingram also complained Scott was violating section 501.008(a). When Scott
pointed out that section 1997e had been amended so as to render Ingram's section 501.008(a)
complaints moot, Ingram abandoned those claims. See 42 U.S.C.A. § 1997e (West Supp. 1999). 
In Scott's motion for summary judgment, he again attacked Ingram's section 501.008(a)
complaints; Ingram reiterated that those claims had been abandoned.
5. The inclusion of the certification order answered only Ingram's abandoned claims that the
grievance system was not certified, thus violating section 501.008(a) of the Government Code. 
6. We further note that Scott did not make this specific argument to the trial court in his motion
for summary judgment; in his motion for summary judgment he argued the statute did not require
the procedures to be in writing and briefly explained the overall grievance procedures, making
the conclusory statement that they were statutorily sufficient.
7. Ingram requested in his motion that he be granted summary judgment on his claim that
"Scott is not in compliance with applicable portions of 42 USC § 1997e which is referenced in
[section] 501.008." However, Ingram abandoned his claims based on section 501.008(a) and was
not entitled to judgment as a matter of law on his assertion that the grievance procedures are not
in compliance with sections 1997e and 501.008(a).
8. It is not clear from the record exactly how Ingram's mailings have been addressed. We
note Ingram has sent all of his documents by mail and appears to have addressed all of them in
the same manner; it also appears that most of his mailings have made their way to Scott's attorney
except for the requests for admission and Ingram's appellate brief. 


he
cause to the district court for further proceedings.



 
 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: June 22, 2000

Do Not Publish

1. Scott states he was unable to review the complete record until after the week of April 24
because it was checked out. This is not entirely correct. The record was unavailable not because
it was already checked out, but because the Court was using the record to prepare its opinion.
2. In July 1997, Ingram filed a petition for writ of mandamus with the supreme court, which
denied his petition for lack of jurisdiction. Ingram then filed a petition for writ of mandamus in
the district court of Walker County, which transferred the cause to Travis County. 
3. Before filing his motion for summary judgment, Scott sought to have Ingram's suit
dismissed as frivolous under section 14.003 of the Texas Civil Practice and Remedies Code. See
Tex. Civ. Prac. & Rem. Code Ann. § 14.003(a)(2) (West Supp. 2000). Ingram pointed out that
his suit, while brought pro se, was not brought in forma pauperis and therefore was not subject
to dismissal under section 14.003. See id. § 14.002(a). 
4. In relevant part, section 501.008 reads as follows:


(a) The department shall develop and maintain a system for the resolution of
grievances by inmates housed in facilities operated by the department or under
contract with the department that qualifies for certification under 42 U.S.C.
Section 1997e and the department shall obtain and maintain certification under
that section. . . . 


(b) The grievance system must provide procedures:


 (1) for an inmate to identify evidence to substantiate the inmate's claim; and 


 (2) for an inmate to receive all formal written responses to the inmate's
grievance.


Tex. Gov't Code Ann. § 501.008. 


 Initially, Ingram also complained Scott was violating section 501.008(a). When Scott
pointed out that section 19