**Alejandro MONTANA, Appellant,**

v.

**Linda PATTERSON, et al., Appellees.**

**No. 12–92–00349–CV.**

Court of Appeals of Texas,
Tyler.

Dec. 28, 1994.

---

Alejandro Montana, pro se.

Sharon Felfe, Austin, for appellees.

HOLCOMB, Justice.

Appellant appeals the trial court's dismissal of his causes of action against the Appellees as frivolous. Appellant's brief assigns no points of error and only states allegations, citations, quotes, demands, and conclusions; however, we have liberally construed the arguments he makes within his brief because he is an inmate without benefit of counsel. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). We will affirm.

In August of 1989, Appellant, an inmate in the Texas Department of Criminal Justice–Institutional Division ("TDC"), filed suit against various TDC mailroom employees and alleged that they: (1) interfered with Appellant's outgoing "legal/special correspondence"; (2) unreasonably detained Appellant's incoming general correspondence; (3) opened Appellant's incoming mail which was addressed to him from the National Indian Law Library and Native American Rights Fund; and (4) withheld delivery of two unsigned postcards, a letter with a taped picture, a publication entitled *"The Penthouse Letters, The Sexual State of the Nation,"* and four clipped pages from a publication catalog entitled *"Leisure Concepts."* As a result, Appellant alleged that Appellees violated his right to freedom of speech and association and denied him Equal Protection and Due Process of Law guaranteed by the UNITED STATES CONSTITUTION and the TEXAS CONSTITUTION. Appellant also alleged that Appellees violated the rights and remedies available to him consistent with TEXAS CIVIL PRACTICE AND REMEDIES CODE ANN. section 104.002 (Vernon 1994). Appellant sought both compensatory and punitive damages.

In October 1989, Appellant's suit was dismissed by the trial court as frivolous, under Section 13.001, TEXAS CIVIL PRACTICE AND REMEDIES CODE. He appealed that dismissal, and in August of 1990, this Court remanded the case for further proceedings in light of *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). On remand, the trial court solicited affidavits from the parties in support of their positions. After reviewing the affidavits, the trial court again dismissed Appellant's suit as frivolous in June of 1991. However, Appellant claimed that he did not receive notice of the dismissal until November of 1991. Upon receipt of the notice, Appellant attempted to appeal the trial court's June 1991 dismissal order. However, in January of 1992, this Court dismissed the cause because we lacked jurisdiction. Thereafter, Appellant sought relief by a bill of review in the trial court. The trial court granted Appellant's request for a bill of review and vacated the June 1991 order. At the bill of review hearing, Appellant admitted that his purpose for filing the bill of review was to acquire a judgment from the trial court that would allow him to renew the time in which he would have to perfect an appeal. After the trial court granted the bill of review, Appellant did not file any new pleadings, nor did he introduce any evidence. The trial court again dismissed Appellant's case as frivolous.

In determining whether a *forma pauperis* suit filed by a prison inmate has any merit, the court has "[t]he unusual power to pierce the veil of the complainant's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). Section 13.001 provides in relevant part that:

(a) A court in which an affidavit of inability to pay under Rule 145, TEX.R.CIV.P. has been filed may dismiss the action on a finding ...

2) The action is frivolous ...

(b) In determining whether an action is frivolous ... the court may consider whether,

2) The claim has no arguable basis in law or in fact....

TEX.CIV.PRAC. & REM.CODE ANN. § 13.001(a) and (b)(2) (Vernon 1994). The standard for review applied by appellate courts in reviewing dismissals under Section 13.001 is whether the trial court abused its discretion. *Birdo v. DeBose*, 819 S.W.2d 212, 214 (Tex. App.—Waco 1991, no writ); *Johnson v. Lynaugh*, 766 S.W.2d 393, 394 (Tex.App.—Tyler 1989), *writ denied*, 796 S.W.2d 705 (Tex. 1990). The trial courts are given broad dis-

cretion to determine whether a case should be dismissed because: (1) prisoners have a strong incentive to litigate; (2) the government bears the cost of an *in forma pauperis* suit; (3) sanctions are not effective; and (4) the dismissal of unmeritorious claims accrue to the benefit of state officials, courts, and meritorious claimants. *Green v. McKaskle*, 788 F.2d. 1116, 1120 (5th Cir.1986).

■ First, Appellant attempted to allege a cause of action against the Appellees pursuant to Section 104.002 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. The purpose of this statute, however, is limited to indemnification of employees of the state and does not constitute a waiver of immunity, nor does it create a cause of action for Appellant. TEX.CIV.PRAC. & REM.CODE ANN. § 104.002 (Vernon 1994). Therefore, as a matter of law, Section 104.002 cannot serve as a ground for Appellant's case, and the trial court did not err when it dismissed Appellant's case under this provision.

■ Appellant next attempted to assert a cause of action against the Appellees under Article I, sections 3, 9, and 19 of the TEXAS CONSTITUTION. While the TEXAS CONSTITUTION has sections that parallel the federal BILL OF RIGHTS, there is no state "Constitutional Tort" similar to 42 U.S.C.A. Section 1983 of the federal system. *Bagg v. University of Texas Medical Branch at Galveston*, 726 S.W.2d 582, 584 n. 1 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Therefore, insofar as Appellant's claim is based upon a violation of the TEXAS CONSTITUTION'S BILL OF RIGHTS, he has no cause of action.

■ Appellant also alleged in his petition that his claim was brought under 42 U.S.C.A. Section 1983, and under the First and Fourteenth Amendments to the UNITED STATES CONSTITUTION. However, the trial court had an affidavit of Linda Cook, which reads in part:

I am presently employed as the mailroom supervisor at the Eastham Unit of the Texas Department of Criminal Justice, Institutional Division ("TDCJ–ID"). During the period of time made the basis of this lawsuit, I held the same position.

I have attached a true and correct copy of the TDC[J–ID] Correspondence Rules (as approved by the court in *Guajardo v. Estelle*, 568 F.Supp. 1354 (S.D.Tex.1983)) hereto as Exhibit I.

As Exhibit 2, I have attached true and correct copies of business records within the file on inmate Alejandro Montana, TDCJ No. 448568. I do hereby certify that I am the custodian of records relating to correspondence maintained in the usual course of business on each inmate at the Eastham Unit. I further certify that the records attached hereto are maintained in the usual and regular course of business of the Mailroom Supervisor at the Eastham Unit of TDCJ–ID and that such records are maintained on each and every inmate confined here. All memoranda, reports, records or data compilations kept therein are made at or near the time by, or from information transmitted by, a person with knowledge of the events, acts, conditions, opinions or diagnoses described. These records are kept in the course of a regularly conducted business activity, and it is the regular practice of this institution to make such memoranda, reports, records or data compilations.

Inmate Montana complains that I refused for mailing as sealed mail letters addressed to Mr. Burgess C. Primeaux, Native American Rights Fund, and to the National Indian Law Library, Native American Rights Fund. I have cards, verified by the Mail System Coordinators Panel, in my office which state that mail to and from those names and/or organizations should be treated as general correspondence. Copies of those cards are attached hereto as Exhibit 2. Thus, I refused to mail those letters sealed and any incoming correspondence from those names or organizations would not be opened in the inmate's presence.

Inmate Montana also complains that letters addressed to Mr. John Echohawk, Director, Native American Rights Fund, were refused for mailing as sealed correspondence. I treated those letters as general correspondence because I had the card in my file which indicated that mail addressed to the Native American Rights

Fund should be treated as general correspondence. At the time, I did not know whether or not Mr. Echohawk was a licensed attorney and I did not request that the Mail System Coordinators Panel check on that because there was no indication on the envelope that Mr. Echohawk was an attorney. If inmate Montana had indicated on the envelope that Mr. Echohawk was an attorney, I would have called the Mail System Coordinators Panel to verify.

Inmate Montana names a letter addressed to the Standing Committee on Lawyer Referral Services, American Bar Association, noted "Attention Legal Officer." I called the Mail System Coordinators Panel to request a determination as to whether the letter should be treated as sealed legal correspondence. I was advised to treat the letter as general correspondence.

Inmate Montana complains of the withholding of one page of a letter with a picture taped on it. That page is still in my possession as inmate Montana requested the item to be held for litigation. The photograph is taped to the letter and could not be removed without destroying the contents of the page. The uninspectable substance was denied because the item constitutes contraband and inmates are not allowed to receive such items in the mail. Any substance which cannot be readily analyzed by the unit mailroom will be denied as "uninspectable" at the descretion [sic] of the mailroom supervisor. This is because to inspect underneath the item would possibly involve destruction of the material it is stuck on. We know it is not true in every case, but there have been those persons who put things under items in an attempt to smuggle contraband into the institution.

I refused to deliver two unsigned postcards to inmate Montana because postcards do not fall within the definition of stationery as defined in the TDC[J–ID] Correspondence Rules. No inmate at TDCJ–ID may receive unsigned postcards. In part[,] Rule 3.9.1.4 states[:] Stationery is herein defined as any color paper, not to exceed the size of 9″ × 15″, or unstamped envelopes, including carbon paper, but excluding any paper or envelope with names, addresses or letterhead. No provision is made for postcards in the definition of stationery.

Also attached to the affidavit were various documents notifying Appellant of the action taken in regard to his mail. Appellant was notified that the Directors Review Committee had affirmed the actions of the mail room employees. Both the mail room personnel and the Directors Review Committee complied with the TDCJ–ID Correspondence Rules promulgated which have been approved by the Federal Court. Therefore, the court properly dismissed Appellant's claim.

■■■ Appellees claimed qualified or "good faith" immunity to actions brought under 42 U.S.C.A. § 1983, and cited *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Once the Appellees have asserted the qualified immunity and established that the alleged wrongful acts were taken within the scope of their discretionary authority, the burden then shifts to the Appellant to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992). For Appellant to successfully defend such a claim, he must have shown that the Appellees' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. The liability of a government official generally turns on the "objective legal reasonableness" of the action assessed in the light of the legal rules that were "clearly established" at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir.1990).

■■■ Appellant's allegations that Appellees failed to follow the TDC Correspondence Rules and that such failure gave him a cause of action under the Fourteenth Amendment are unfounded. A violation of Appellees' own policy, without more, does not give rise to a cause of action under Section 1983. *Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989); *Hernandez v. Estelle*, 788 F.2d 1154 (5th Cir.1986). The trial court properly

found that the Appellees were acting in accordance with the rules and regulations previously established. The Supreme Court has clearly stated that the Due Process Clause is not implicated when a state official's negligent conduct causes unintended loss of, or injury to, life, liberty, or property. *Daniels v. Williams,* 474 U.S. 327, 329, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). In his petition, Appellant has alleged nothing less than a possible negligence action to which the Appellees are immune. Therefore, the trial court properly dismissed the Fourteenth Amendment claims as frivolous. *Johnson v. Lynaugh,* 800 S.W.2d 936, 939 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

 We now turn to Appellant's claim that his First Amendment rights were violated when he was denied the publication, *"The Penthouse Letters, the Sexual State of the Nation,"* and four clipped pages from a catalog entitled, *"Leisure Concepts."* The Supreme Court has clearly held that obscenity is outside First Amendment protection. *Miller v. California,* 413 U.S. 15, 16, 93 S.Ct. 2607, 2610, 37 L.Ed.2d 419 (1973). TDC Correspondence Rules numbers 3, 9, 1, and 6i, prohibited inmates from receiving material that "[c]ontains a graphic presentation of sexual behavior that is in violation of law." Appellant was given notice that this material was disapproved and he was allowed to appeal. The reason given for not allowing it was that it contained graphic descriptions of incest between brother and sister, graphic descriptions of female homosexual activity, and a graphic description of "beast[i]ality." It is clear that both incest and homosexual activity is a violation of the PENAL CODE, and therefore forbidden under the TDC Correspondence Rules. "Beastiality" appears to have been disproved under Section 21.07 and 43.21, *et seq.,* of the TEXAS PENAL CODE ANN. (Vernon 1992). The disapproved text, insofar as it applies to "beastiality," reads as follows:

After reading your magazine for many years, I've decided to write in and tell you of my new experience. Recently my wife and I discovered a new sensation. I find it very exciting to position myself over our acquarium [sic] so that my genitals dangle in the water.

If I hold quite still, the fish come up to them and start nibbling. It is quite a sensuous feeling and very arousing. If there are any others who have done this, I would like them to write in and tell what they think about this new adventure.— *B.P., Colorado Springs, Colo.*

In TEXAS PENAL CODE, section 21.07:

(a) A person commits an offense if he knowingly engages in any of the following acts in a public place or, if not in a public place, he is reckless about whether another person is present who will be offended or alarmed by his act:

(1) an act of sexual intercourse;

(2) an act of deviate sexual intercourse;

(3) an act of sexual contact;

(4) an act involving *contact* between the person's mouth or *genitals* and the anus or genitals of an animal or fowl.

TEX.PENAL CODE ANN. § 21.07 (Vernon 1992).

The applicable portions of Section 43.21 on the definition of obscene reads as follows:

(a) In this subchapter:

(1) "Obscene" means material or a performance that:

(A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B) depicts or describes:

(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and *sexual beastiality;*

(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

TEX.PENAL CODE ANN. § 43.21 (Vernon 1992).

In *Guajardo v. Estelle,* 580 F.2d 748 (5th Cir.1978), the court discussed the TDC ban on publications and correspondence and held that censorship of prison mail was justified if the regulation or practice in question fur-

thered an important or substantial government interest unrelated to the suppression of expression. In *Guajardo,* the Supreme Court held that a prisoner retains the First Amendment rights that are not inconsistent with their status as a prisoner or with the legitimate penalogical objectives of the correctional system. The *Guajardo* court recognized that "inmates stimulated by sexually explicit material experience a temptation to further criminal behavior." *Guajardo,* 580 F.2d at 762. Finding it clear that a legitimate rehabilitation interest of prison authorities is involved in preventing certain sexual activity, the *Guajardo* court was not willing to condone the introduction of material into the prison that would exacerbate the situation of nonconsensual homosexual activity. *Id.* at 761. The clippings from *"Leisure Concepts"* contained graphic descriptions of homosexual acts between both men and women. We therefore hold in accordance with *Guajardo* that withholding material depicting graphic sexual behavior which is a violation of law from inmates in Texas prisons represents a legitimate penalogical interest outweighing the Appellant's First Amendment rights.

After reviewing the record, we hold that the trial court did not abuse its discretion in its determination that Appellant's *forma pauperis* action was frivolous and that it had no arguable basis in law or in fact. If anything, Appellees were negligent, but qualified for "good faith immunity" in the exercise of their discretion to determine whether the prisoners' mail was "special/legal mail" and to determine whether the mail was obscene and in violation of law.

The judgment of the trial court is **affirmed.**