# NO. 12-10-00149-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RAFAEL GURRUSQUIETA VEGA,* *APPELLANT* | § | *APPEAL FROM THE 87TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *TEXAS DEPARTMENT OF CRIMINAL* *JUSTICE–CORRECTIONAL* *INSTITUTIONS DIVISION* *AND L. CLAY,* | | |
| *APPELLEES* | § | *ANDERSONCOUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rafael Gurrusquieta Vega, an inmate in the Texas Department of Criminal Justice-Institutional Division (TDCJ), proceeding pro se*,* filed an *in forma pauperis* suit against TDCJ and correctional officer L. Clay (collectively Appellees). Vega now appeals the trial court's dismissal of his suit. Vega raises three issues on appeal. We affirm.

## BACKGROUND

Vega is an inmate. While incarcerated, Vega filed a civil suit against Appellees alleging that they are liable in tort for injuries he sustained when a flat bed trailer on which Vega was being transported to a work detail overturned. By his suit, Vega sought recovery of compensatory and exemplary damages from Appellees for their negligence and gross negligence as well as damages for the violation of his constitutional rights.

On March 18, 2010, without conducting a hearing, the trial court found that, among other things, Vega's suit was "frivolous or malicious" and dismissed it without prejudice. This appeal followed.

**DISMISSAL PURSUANT TO TEXAS CIVIL PRACTICE AND REMEDIES CODE CHAPTER 14**

In his second issue, Vega argues that the trial court improperly dismissed his suit pursuant to Texas Civil Practice and Remedies Code, Section 14.003. We review the trial court's dismissal of an *in forma pauperis* suit under an abuse of discretion standard. *Hickson v. Moya*, 926 S.W.2d 397, 398 (Tex. App.–Waco 1996, no writ). A trial court abuses its discretion if it acts arbitrarily, capriciously, and without reference to any guiding rules or principles. *Lentworth v. Trahan*, 981 S.W.2d 720, 722 (Tex. App.–Houston [1st Dist.] 1998, no pet.). The trial courts are given broad discretion to determine whether a case should be dismissed because (1) prisoners have a strong incentive to litigate; (2) the government bears the cost of an *in forma pauperis* suit; (3) sanctions are not effective; and (4) the dismissal of unmeritorious claims accrues to the benefit of state officials, courts, and meritorious claimants. *See Montana v. Patterson*, 894 S.W.2d 812, 814-15 (Tex. App.–Tyler 1994, no writ).

In the instant case, the trial court found that Vega's claim is "frivolous or malicious." However, we will affirm a dismissal if it was proper under any legal theory. *See Johnson v. Lynaugh*, 796 S.W.2d 705, 706-07 (Tex. 1990); *Birdo v. Ament*, 814 S.W.2d 808, 810 (Tex. App.–Waco 1991, writ denied).

Chapter 14 of the Texas Civil Practice and Remedies Code controls suits brought by an inmate in which the inmate has filed an affidavit or unsworn declaration of inability to pay costs.[1] TEX. CIV. PRAC. & REM. CODE ANN. § 14.002(a) (Vernon 2002); *Hickson*, 926 S.W.2d at 398. Texas Rule of Civil Procedure 145 sets forth the requirements of an affidavit on indigency as follows:

> (a)      *Affidavit.* In lieu of paying or giving security for costs of an original action, a party who is unable to afford costs must file an affidavit as herein described. A "party who is unable to afford costs" is defined as a person who is presently receiving a governmental entitlement based on indigency or any other person who has <u>no</u> ability to pay costs.
>
> ....
>
> (b)      *Contents of Affidavit.* The affidavit must contain complete information as to the party's identity, nature and amount of governmental entitlement income, nature and amount of employment income, other income, (interest, dividends, etc.), spouse's income if available to the party, property owned (other than homestead), cash or checking account, dependents, debts, and monthly expenses. The affidavit shall contain the following statements: "I am unable to pay the court costs. I verify that the statements made in this affidavit are true and correct."

---

[1] Chapter 14 does not apply to suits brought under the Family Code. TEX. CIV. PRAC. & REM. CODE ANN. § 14.002(b) (Vernon 2002).

TEX. R. CIV. P. 145(a), (b) (emphasis added). To enable the court to determine whether an inmate is indigent, Sections 14.004(c) and 14.006(f) require the inmate to file a certified copy of his inmate trust account statement that "reflect[s] the balance of the account at the time the claim is filed and activity in the account during the six months preceding the date on which the claim is filed." TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.004(c), 14.006(f) (Vernon 2002). Section 14.003 provides that a trial court may dismiss a claim before or after service of process if the court finds that the inmate's allegation of poverty in the affidavit or unsworn declaration is false. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a)(1) (Vernon 2002).

Generally, the test for determining entitlement to proceed *in forma pauperis* is whether the preponderance of the evidence shows that the appellant would be unable to pay the costs of his suit if he wanted to and made a good faith effort to do so. *See **Griffin Indus. v. Thirteenth Court of Appeals***, 934 S.W.2d 349, 351 (Tex. 1996). A prisoner at a Texas Department of Criminal Justice facility who has no money or property is considered indigent. ***McClain v. Terry***, 320 S.W.3d 394, 397 (Tex. App.–El Paso 2010, no pet.) (citing ***Allred v. Lowry***, 597 S.W.2d 353, 355 (Tex. 1980)). However, "[a]n inmate who has funds in his trust account is not indigent." ***Terry***, 320 S.W.3d at 397 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 14.006(b)(1)). The statute outlines a formula by which an inmate's trust funds can be utilized for payment of costs. ***Terry***, 320 S.W.3d at 397 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 14.006(b)(1)).

In the case at hand, in his sworn declaration of inability to pay costs, Vega stated, in pertinent part, as follows: "[D]ue to my poverty, I am unable to pay in advance the filing fee for [these] proceedings or to give security for the filing fee, or costs thereof."[2] As required, Vega also filed a certified copy of his inmate trust account statement. At the time the trust account statement was prepared, Vega had a balance of $118.70, and the average monthly balance in the six month period preceding his suit was $172.02. Further, the average amount deposited each month in the preceding six months was $88.30. Moreover, in the six months preceding the filing of his lawsuit, $530.00 had been deposited in Vega's account, $220.00 of which had been deposited in the three month period prior to the date Vega filed suit.

In sum, because Vega had funds in his inmate trust account, he is not considered indigent, and his allegation of poverty was, therefore, false. *See **Terry***, 320 S.W.3d at 397; *see also **Foster v. Comal Cnty. Sheriff***, No. 03-08-00539-CV, 2009 WL 2476652, at *2 (Tex. App.–Austin Aug. 13,

---

[2] Vega later stated in his declaration that he had received money from friends and family to purchase materials from the prison commissary.

2009, no pet.) (mem. op.) (citing TEX. R. CIV. P. 145(a) (defining "party who is unable to afford costs" as "a person who is presently receiving a governmental entitlement based on indigency . . . who has <u>no ability</u> to pay costs" (emphasis added)); TEX. GOV'T CODE ANN. § 501.014(e)(4) (Vernon Supp. 2010) (authorizing withdrawal of money from inmate trust accounts "as payment in full for all orders for court fees and costs")). Accordingly, we hold that the trial court did not abuse its discretion in dismissing Vega's suit because Vega made a false allegation of poverty in his declaration of inability to pay costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. §14.003(a)(1); *McClain*, 320 S.W.3d at 398. Vega's second issue is overruled.[3]

### COLLECTION OF COSTS

In his third issue, Vega argues that the trial court erred and abused its discretion when the District Clerk of Anderson County, Texas issued a bill of costs and the court entered an order for the collection of court fees and costs in the sum of $244.00 for expenses that were not incurred by him and could not be assessed under applicable state law. Rather, according to Vega, the only costs he could have incurred in connection with the filing of his suit were the district clerk filing fee of $50.00, $10.00 for records management and preservation fees, and $15.00 for the court reporter fee.

First, the language of the trial court's collection order tracked the payment schedule as required by Chapter Fourteen. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.006. Next, with regard to the fees themselves, the Office of Court Administration has compiled an itemized list of all filing fees that may be charged to litigants by the district clerk for 2010, the year in which Vega filed suit.[4] That list contains a description of all fees, the amounts to be charged, and the statutory source law authorizing each fee. Vega cites only some of the sections authorizing the collection of fees by the district clerk in lodging his fee complaint. *See* TEX. GOV'T CODE ANN. §§ 51.317 (Vernon Supp. 2010) (filing fees and record management fee), 51.601 (Vernon Supp. 2010) (court reporter fee). However, Vega ignored other fees that the district clerk could collect in connection with the filing of a civil suit such as his. *See, e.g.,* TEX. GOV'T CODE ANN. §§ 22.2131 (Vernon Supp. 2010) (appellate judicial system fee), 51.305 (Vernon Supp. 2010) (district court records archive fee), 51.708 (court records preservation fee) (Vernon Supp. 2010); TEX. LOC. GOV'T CODE

---

[3] Because we have overruled Vega's second issue, we do not consider his first issue pertaining to the trial court's finding that he failed to timely file his suit pursuant to the requirements of Texas Civil Practice and Remedies Code, Section 14.005. *See* TEX. R. APP. P. 47.1.

[4] *See* http://www.courts.state.tx.us/oca/pdf/DistrictClerkCivilFilingFees2010.pdf.

4

ANN. §§ 133.151 (Vernon 2008) (consolidated state fee), 133.154 (Vernon 2008) (judicial support fee), 291.008 (Vernon 2005) (courthouse security fee), 323.023 (Vernon 2005) (law library fee).

Vega also complains of a sheriff's jury fee assessed against him in the amount of $22.00. The Texas Constitution establishes the commissioners' court as the governing body of the county. TEX. CONST. art. V, § 18. Thus, the commissioners' court of a county can set a reasonable fee for services provided by sheriffs. *See* TEX. LOC. GOV'T. CODE ANN. § 118.131(a) (Vernon 2008); *see also Harris Cnty. v. Proler*, 29 S.W.3d 646, 648 (Tex. App.–Houston [14th Dist.] 2000, no pet.). The commissioners' court must provide written notice of the amounts of the fees to the Texas Comptroller of Public Accounts. *See id.* § 118.131(f). The comptroller's office is then required to compile a list of fees charged by Texas sheriffs in discharging their duties as set by the commissioners' court of the relevant county. *See id*. For the Anderson County Sheriff's Office in 2010, the applicable $22.00 fee is a "Sheriff's Jury Fee."[5] Vega failed to show that the district clerk and sheriff's office's fees were unauthorized by state law.

Vega's third issue is overruled.

## DISPOSITION

We have overruled Vega's second and third issues and have declined to consider his first issue. Having done so, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered July 29, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[5]*See* http://www.texasahead.org/lga/sheriffs/sher10/2010S&CFeeManual.pdf.