# NO. 12-10-00397-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JUAN JOSE RAMOS,*<br>*APPELLANT* | § | *APPEAL FROM THE 369TH* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *TEXAS DEPARTMENT OF*<br>*CRIMINAL JUSTICE–*<br>*CORRECTIONAL INSTITUTIONS*<br>*DIVISION AND L. CLAY,* | | |
| *APPELLEES* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Juan Jose Ramos appeals from the trial court's dismissal of his suit under Chapter Fourteen of the Texas Civil Practice and Remedies Code. He raises three issues on appeal. We affirm.

## BACKGROUND

Ramos, an inmate, claims that he was injured on August 7, 2009, while en route to work detail. On August 11, 2009, Ramos filed a Step One Offender Grievance Form with the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ-CID). According to Ramos's grievance, he was riding in a trailer when other inmates started jumping off. Ramos also jumped off the trailer. He suffered injuries but did not report them. In response to his grievance, TDCJ-CID told Ramos to report his injuries to nursing.

According to the Step One Offender Grievance Form, TDCJ-CID returned its response to Ramos on September 4, 2009. However, Ramos claims that he did not receive the response. He then filed his Step Two Offender Grievance Form with TDCJ-CID on April 17, 2010. TDCJ-CID responded to his Step Two grievance on July 16, 2010.

1

Ramos filed suit against TDCJ-CID and L. Clay, an employee of TDCJ-CID.  According to Ramos's petition, Clay was supervising Ramos and other inmates.  Clay told a tractor driver to pull a trailer of inmates to the work area.  The driver allegedly protested that the trailer was unsafe because of poor suspension; bald, improperly inflated tires; a lack of lookout devices, brakes, safety railings, or seats; and an uneven hitch or fifth wheel.  Appellant alleges that while they were en route, Clay instructed the driver to "speed up."  The trailer then turned over, and Ramos was thrown from the trailer and injured.  Ramos was taken to the medical department, but because of his limited English, he was returned to work.

Ramos brought his pro se *in forma pauperis* suit as an indigent inmate.  Therefore, the suit is governed by the procedural requirements of Chapter Fourteen of the civil practice and remedies code.  The trial court found Ramos's claims frivolous or malicious because the realistic chances of ultimate success are slight.[1]  Accordingly, the trial court dismissed his lawsuit and assessed costs against Ramos in the amounts allowed by Chapter Fourteen.  This appeal followed.

## DISMISSAL OF SUIT

In his second issue, Ramos argues that the trial court erred and abused its discretion when it dismissed his suit because his claims under the Texas Tort Claims Act and under 42 U.S.C. § 1983 have an arguable basis in law and fact.

**Standard of Review**

We review the trial court's dismissal of an *in forma pauperis* suit under an abuse of discretion standard.  *Hickson v. Moya*, 926 S.W.2d 397, 398 (Tex. App.–Waco 1996, no writ).  A trial court abuses its discretion if it acts arbitrarily, capriciously, and without reference to any guiding rules or principles.  *Lentworth v. Trahan*, 981 S.W.2d 720, 722 (Tex. App.–Houston [1st Dist.] 1998, no pet.).  We will affirm a dismissal if it was proper under any legal theory.  *Johnson v. Lynaugh*, 796 S.W.2d 705, 706-07 (Tex. 1990); *Birdo v. Ament*, 814 S.W.2d 808, 810 (Tex. App.–Waco 1991, writ denied).  The trial courts are given broad discretion to determine whether a case should be dismissed because (1) prisoners have a strong incentive to litigate; (2) the government bears the cost of an *in forma pauperis* suit; (3) sanctions are not effective; and (4) the dismissal of unmeritorious claims accrue to the benefit of state officials,

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003 (Vernon 2002).

2

courts, and meritorious claimants. *See Montana v. Patterson*, 894 S.W.2d 812, 814-15 (Tex. App.–Tyler 1994, no writ).

**Chapter Fourteen**

Chapter Fourteen of the Texas Civil Practice and Remedies Code controls suits brought by an inmate when the inmate filed an affidavit or unsworn declaration of inability to pay costs.[2] TEX. CIV. PRAC. & REM. CODE ANN. § 14.002(a) (Vernon 2002); *Hickson*, 926 S.W.2d at 398. The inmate must comply with the procedural requirements set forth in Chapter Fourteen. TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.002(a), 14.004, 14.005 (Vernon 2002). Failure to fulfill those procedural requirements will result in the dismissal of an inmate's suit. *See id.* § 14.003 (Vernon 2002); *Brewer v. Simental*, 268 S.W.3d 763, 767 (Tex. App.–Waco 2008, no pet.) (citing *Bell v. Tex. Dep't of Crim. Justice-Institutional Div.*, 962 S.W.2d 156, 158 (Tex. App.– Houston [14th Dist.] 1998, pet. denied)).

One such procedural requirement is the exhaustion of available remedies with the TDCJ-CID. *See id.* § 14.005. An inmate must file an affidavit or unsworn declaration stating the date the grievance was filed and the date the written decision of TDCJ-CID was received by the inmate. *Id.* The inmate must also attach a copy of the written decision from the grievance system. *Id.* Dismissal is likewise proper if the inmate filed an affidavit or unsworn declaration that the inmate knew was false. *Id.* at § 14.003(a).

Additionally, filing a claim that is frivolous or malicious will result in the dismissal of an inmate's suit. *See id.* To determine whether a claim is frivolous or malicious, the factors we consider include whether the claim's realistic chance of ultimate success is slight or the claim has no arguable basis in law or in fact. *Id.* at § 14.003(b).

**Texas Tort Claims Act**

First, we address Ramos's claims brought under the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-.109 (Vernon 2011). We must determine whether the trial court correctly dismissed these claims as frivolous or malicious.

In his appellate brief, Ramos devotes one sentence to explaining how the facts alleged in his petition state a claim under the TTCA. Specifically, Ramos argues, "In liberally construing [Ramos's] allegations as set forth in his Original Petition, that [Clay's], an employee of [TDCJ-

---

[2] Chapter Fourteen does not apply to an action brought under the Texas Family Code. TEX. CIV. PRAC. & REM. CODE ANN. 14.002(b) (Vernon 2002).

CID], negligence was the proximate cause of [Ramos's] injuries that he suffered, and that negligent conduct involved the use or condition of tangible personal property."[3]

An appellant's brief must contain a clear and concise argument supporting the appellant's contentions, including appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). When an appellant fails to include any relevant citation of authority or discussion of pertinent facts to support his contention, we will not perform an independent review of the record and the applicable law to determine whether the error complained of occurred. *See Ryan v. Abdel-Salam*, 39 S.W.3d 332, 336 (Tex. App.–Houston [1st Dist.] 2001, pet. denied). Because Ramos has not met this burden, he has waived his complaint that the trial court improperly dismissed these claims. *See id*.

Nevertheless, even if we were to address the merits of Ramos's claims brought under the Texas Tort Claims Act, the result would not change. Pursuant to the doctrine of sovereign immunity, the State of Texas cannot be sued in her own courts without her consent and then only in the manner indicated by that consent. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003) (citing *Hosner v. De Young*, 1 Tex. 764, 769 (1847)). For the legislature to waive the state's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the legislature's waiver of immunity. *Taylor*, 106 S.W.3d at 696. That means a statute that waives the state's immunity must do so beyond doubt. *Id.* at 697. Further, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities in favor of the state's retaining its immunity. *See id.*

The Texas Tort Claims Act provides a limited waiver of immunity, allowing suits against governmental units under certain, narrow circumstances. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). As relevant in the instant case, those circumstances include "personal injury . . . caused by a condition or use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2011). This section waives

---

[3] In Ramos's petition and brief, he argues only the use or condition of tangible personal property ground for waiver of sovereign immunity under the TTCA, and not the separate ground that his injuries arose from the operation or use of motor-driven vehicles or equipment. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) *with* § 101.021(2) (Vernon 2011); *see also Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002) (grounds for waiver of sovereign immunity under TTCA are distinct); *Lacy v. Rusk State Hosp.*, 31 S.W.3d 625, 629 (Tex. App.—Tyler 2000, no pet.) (plaintiff must plead specific ground upon which he relies for sovereign immunity waiver under TTCA).

immunity for a use of personal property only when the governmental unit is the user. *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 245-46 (Tex. 2004). "A governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more." *Id.* at 246. Instead, use requires the governmental unit to put or bring the personal property into action or service or employ the personal property for or apply it to a given purpose. *Id*. Negligent supervision, without more, is not a use of personal property by a governmental unit. *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005).

We have reviewed Ramos's petition for claims that potentially fall within the waiver of immunity provided by the Texas Tort Claims Act. Ramos alleges in his petition that Clay was negligent in allowing Ramos to be pulled in the trailer and in requiring the trailer to travel at an excessive speed. However, Ramos further explains that Clay was not driving the tractor pulling the trailer, but instead was simply negligent in his supervision of the tractor driver. He further alleges that TDCJ-CID was negligent in failing to properly supervise Clay. *Bishop* forecloses these claims under the Texas Tort Claims Act. *See id*. Thus, Ramos's claims under the Texas Tort Claims Act are frivolous because they have no arguable basis in law or fact, and the trial court did not err in dismissing them.

## 42 U.S.C. § 1983

Next, we examine Ramos's claim brought under 42 U.S.C. § 1983 to determine whether the trial court correctly dismissed this claim as frivolous or malicious.

Ramos devotes one sentence in his appellate brief to explaining how the facts alleged in his petition state a Section 1983 claim. Ramos argues that "Clay's actions were intentionally, willfully, or wantonly negligent, or [performed] with conscious indifference or reckless disregard for [Ramos's] safety. . . ." He argues that Clay's conduct thus violated Ramos's rights under the Eighth Amendment of the United States Constitution to not be subjected to cruel and unusual punishment.

As stated previously, an appellant's brief must contain a clear and concise argument supporting the appellant's contentions, including appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). When an appellant fails to include any discussion of relevant facts to support its contention, we will not perform an independent review of the record and the applicable law to determine whether the error complained of occurred. *See Ryan*, 39 S.W.3d at

5

336. Because Ramos has not met this burden as to his Section 1983 claim, he has waived his complaint that the trial court improperly dismissed this claim. *See id*.

A review of the merits of Ramos's claim would not change the result. We have reviewed Ramos's petition for potential Section 1983 claims. Ramos's petition raises a claim that Clay forced Ramos to continue working even though Ramos was in pain from the accident. Ramos argues Clay's actions violate Ramos's right to be free from cruel and unusual punishment. However, Ramos failed to make this claim in his Step One Offender Grievance Form filed with TDCJ-CID on August 11, 2009. Instead, Ramos said in his grievance that "everything [happened] so fast and my [adrenaline] was moving fast that I did not speak up because I was under a measure of trauma so I just remained quiet and followed the order of my boss – so that order could be restored." Because Ramos did not complain that Clay kept Ramos working even though Ramos told him that he was in pain, the basis for his Section 1983 claim was expressly excluded from the scope of his grievance. Consequently, Ramos failed to exhaust his administrative remedies as to the Section 1983 claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005; *see also* **Wolf v. Tex. Dep't of Criminal Justice, Institutional Div.**, 182 S.W.3d 449, 451 (Tex. App.—Texarkana 2006, no pet.) (stating inmates in Chapter Fourteen suit cannot add claims or issues to lawsuit that were not addressed in grievance if a grievance is otherwise required). Therefore, the trial court properly dismissed Ramos's Section 1983 claim as well.

Ramos's second issue is overruled. Because we have overruled Ramos's second issue, we need not address Ramos's first issue. *See* TEX. R. APP. P. 47.1.

## COSTS

In his third issue, Ramos argues that the trial court erred and abused its discretion when it ordered collection of court fees and costs in the sum of $244.00[4] for expenses that were not incurred by Ramos and could not be assessed by the district clerk under applicable state law. Ramos argues that the only costs he could have incurred were $75.00. We previously addressed this exact issue. *See* **Donaldson v. Tex. Dep't of Crim. Justice – Correctional Institutions Div.**,

---

[4] In another part of his brief, Ramos references the total amount of the fees charged by the district clerk, $281.00. However, these charges included $37.00 for the clerk's record for the appeal that is not included in the trial court's order for collection. Ramos's appeal relates to the trial court's order for collection, not the amount the district clerk believes Ramos owes. Thus, we examine the propriety of the charges that are a part of the trial court's order for collection only.

Cause No. 12-10-00289-CV, 2011 WL 2638171, at *3 (Tex. App.—Tyler June 30, 2011, no pet. h.) (slip op.).

First, the language of the trial court's collection order tracked the payment schedule as required by Chapter Fourteen. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.006. Next, with regard to the fees themselves, the Office of Court Administration has compiled an itemized list of all filing fees that may be charged to litigants by the district clerk for 2010, the year in which Ramos filed suit.[5] That list contains a description of all fees, the amounts to be charged, and the statutory source law authorizing each fee. Ramos cites only some of the sections authorizing the collection of fees by the district clerk in lodging his fee complaint. *See* TEX. GOV'T CODE ANN. §§ 51.317 (Vernon Supp. 2010) (filing fees and record management fee), 51.601 (Vernon Supp. 2010) (court reporter fee). However, Ramos ignored other fees that the district clerk could collect in connection with the filing of a civil suit such as his. *See, e.g., id.* §§ 22.2131 (Vernon Supp. 2010) (appellate judicial system fee), 51.305 (Vernon Supp. 2010) (district court records archive fee), 51.708 (court records preservation fee) (Vernon Supp. 2010); TEX. LOC. GOV'T CODE ANN. §§ 133.151 (Vernon 2008) (consolidated state fee), 133.154 (Vernon 2008) (judicial support fee), 291.008 (Vernon 2005) (courthouse security fee), 323.023 (Vernon 2005) (law library fee).

Ramos also complains of a sheriff's jury fee assessed against him in the amount of $22.00. The Texas Constitution establishes the commissioners' court as the governing body of the county. TEX. CONST. art. V, § 18. Thus, the commissioners' court of a county can set a reasonable fee for services provided by sheriffs. *See* TEX. LOC. GOV'T. CODE ANN. § 118.131(a) (Vernon 2008); *see also* **Harris Cnty. v. Proler**, 29 S.W.3d 646, 648 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The commissioners' court must provide written notice of the amounts of the fees to the Texas Comptroller of Public Accounts. *See id.* at § 118.131(f). The comptroller's office is then required to compile a list of fees charged by Texas sheriffs in discharging their duties as set by the commissioners' court of the relevant county. *See id*. For the Anderson County Sheriff's Office in 2010, the applicable $22.00 fee is a "Sheriff's Jury Fee."[6] Ramos failed to show that the district clerk and sheriff's office's fees were unauthorized by state law.

Ramos's third issue is overruled.

---

[5] *See* http://www.courts.state.tx.us/oca/pdf/DistrictClerkCivilFilingFees2010.pdf.

[6] *See* http://www.texasahead.org/lga/sheriffs/sher10/2010S&CFeeManual.pdf.

## DISPOSITION

Having overruled Ramos's second and third issues and determined that Ramos's first issue need not be addressed for the resolution of this appeal, we *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered July 29, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)